In the Matter of J. PETER JOHNSON, Petitioner, v BOARD OF TRUSTEES OF THE MIDDLE ISLAND PUBLIC LIBRARY, Respondent. — Proceeding pursuant to CPLR article 78 to review so much of a determination of the respondent, dated February 11, 1982, as, after a hearing, found petitioner guilty of certain stated charges of misconduct and incompetency and dismissed him from his position as director of the Middle Island Public Library. Determination confirmed, insofar as reviewed, and proceeding dismissed on the merits, without costs or disbursements. In our opinion the penalty of dismissal was not excessive in the circumstances disclosed by the record, and it did not constitute an abuse of discretion (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233). An examination of just one of the charges of which petitioner was guilty, charge 10, bears this out. That charge reads as follows: "Charge 10 — Incompetence in that you failed and neglected to comply with Civil Service requirements for appointment of Ruth Goetz as Librarian II from on or about January of 1979, to March of 1981. Specification I — On or about February 16th, 1979, Civil Service rejected the appointment of Ruth Goetz as 'not approved' * * * 'must be appointed from Librarian II list and duty statement'. Specification II — On or about August 13th, 1979, Civil Service rejected the appointment of Ruth Goetz as not approved since she was not appointed from list of Librarian II. Specification III — On or about March 19th, 1980, you erroneously reported to a member of the Board of Trustees that Ruth Goetz was approved and certified as Librarian II. Specification IV — On or about May 5th, 1980, you wrote to a member of the Board that you had received conflicting instructions with respect to Ruth Goetz from Civil Service. Specification V — On or about July 28th, 1980, you filed a certification of eligibles showing Ruth Goetz had been appointed Librarian II effective July 18th, 1980, but you failed and neglected to file, to date, a report of personnel changes on the appointment of Ruth Goetz for approval by Civil Service. Specification VI — On or about August 12th, 1980, you were requested to supply the Board of Trustees with all correspondence relative to this appointment, which to date, has not been received. Specification VII — On March 20th, 1981, the Board of Trustees was informed that Ruth Goetz has not been appointed in accordance with Civil Service requirements." The record reveals that Ruth Goetz, the person mentioned in charge 10, was employed by the library in June, 1975 as a librarian I. The hearing officer found, and our dissenting colleagues do not disagree, that charge 10 and all its specifications were proven by substantial evidence. The hearing officer wrote: "With regard to Charge 10 I believe Mr. Johnson simply did not want to comply with Civil Service procedures even though he knew

that he must. I believe that he simply did not agree with the Civil Service procedure concerning a promotion from Librarian I to Librarian II where the promotion did not involve a clearly defined change in a duty statement or a salary increase. Nevertheless, Civil Service did require that its normal promotional paper work be accomplished. Mr. Johnson failed and neglected to complete the necessary paper work, and at one point put the burden on Mrs. Goetz to solve the problem." It was petitioner's persistent disregard of correct civil service procedures that led the respondent board to find "a pattern of incompetence in filling the second highest professional position in the library". A persistent unwillingness to accept directives from a superior body or person justifies the conclusion reached by the board (*Matter of Short v Nassau County Civ. Serv. Comm.,* 45 NY2d 721). Besides being found guilty of charge 10, petitioner was found guilty of four other charges. The record reveals that the acts underlying some of these charges were deliberate, with petitioner being aware of his wrongdoing. The board's action in response to such repeated acts of misconduct certainly does not shock our consciences (see *Matter of Pell v Board of Educ., supra*). Lazer, J. P., Mangano and Gibbons, JJ., concur.

Weinstein, J., dissents and votes to grant the petition to the extent of modifying the determination, on the law, by vacating the penalty imposed thereupon, remitting the matter to the respondent for the imposition of a new penalty not to exceed a 30-day suspension, and confirming the determination in all other respects, with the following memorandum, in which Thompson, J., concurs: Petitioner, the director of the Middle Island Public Library, was found guilty of charges which involved his failure to comply with various regulations of the Suffolk County Department of Civil Service. The first charge involved his falsely and inaccurately certifying to the Department of Civil Service that the starting salary for certain personnel was $6,100, when, in fact, it was $6,600. The second charge involved a subsequent occasion when he certified to the Department of Civil Service that the starting salary for two clerk-typist positions was $6,600, when, in fact, it was $6,900. The third charge involved the certification by petitioner that the starting salary for the position of librarian I was $11,700, when it was actually $12,000. Petitioner was also found guilty of charge 7, which alleged that he engaged in misconduct in that he "failed to follow Civil Service procedure and misled the Board of Trustees with respect to the hiring of Carol Morrison as Librarian I". Finally, petitioner was found guilty of incompetence under charge 10, which concerned his failure to comply with civil service requirements for the appointment of one Ruth Goetz as librarian II. The hearing officer, who found that charge 7 was not supported by substantial evidence, recommended that petitioner be suspended for 30 days. The board of trustees, however, rejected his recommendation as to the appropriate penalty and dismissed the petitioner. In its decision, the board noted, concerning charges 1, 2, 3 and 7, that it "consider[ed] these charges more serious in light of the Director's awareness of past violations of the Civil Service Law prior to his arrival * * * requiring him to be 'very sensitive' to following 'procedures of Civil Service most accurately' ". Concerning charge 10, the board found that it "constitute[d] a pattern of incompetence in filling the second highest professional position in the Library, which pattern extended over a period of approximately twenty-one months". It is my conclusion that the foregoing characterization by the board of the seriousness of the charges is belied by the record. At the time petitioner was hired, the library had a reputation as one of the worst with regard to complying with civil service regulations. Nevertheless, in spite of the petitioner's misfeasance, he greatly improved the situation at the library. Significantly, Paul Greenburg, chief of classification for the Suffolk County Department of Civil Service, who testified on behalf of the board at the hearing, asserted that the library had become

"average or better" in terms of complying with civil service requirements when considering all the other libraries in Suffolk County. In view of his testimony, the board's finding that charges 1, 2, 3 and 7 were more serious in light of past violations of the Civil Service Law is unfounded. Apparently, despite these few instances of noncompliance, petitioner's over-all compliance with civil service requirements was so good that Mr. Greenburg rated the library at "average or better". This means that he did not consider the infractions as serious as did the board of trustees, although its main reason for concern stemmed from the difficulties the library had had with civil service *prior* to the hiring of petitioner. Moreover, concerning charge 10, while petitioner may have been guilty of incompetence in failing to effect promotion of Ruth Goetz in accordance with civil service requirements, I would not characterize petitioner's misfeasance here as "a pattern of incompetence" as the board did in its decision. The evidence demonstrates that notwithstanding petitioner's shortfalls, the over-all effectiveness of the library was not impaired. For instance, as the hearing officer found, members of the library staff testified that petitioner was an effective director and that he enjoyed their admiration and respect. In addition, a professional survey conducted by the Suffolk Cooperative Library System while petitioner was director indicated that the majority of the patrons of the library expressed "considerable satisfaction" with the services they received. In fact, the level of satisfaction was among the highest, if not the highest, compared to all the other libraries surveyed. Furthermore, there was testimony to the effect that one of the members of the board of trustees, Ann Fegley, was over-involving herself in the day-to-day operations of the library, thereby hampering petitioner's efforts to run the library. In view of the fact that petitioner greatly improved the situation at the library, I am of the view that the penalty of dismissal is "so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct" (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 234). Accordingly, the disproportionality of the penalty to the offense is so great " 'as to be shocking to one's sense of fairness' " (*Matter of Pell v Board of Educ., supra,* p 233). Bearing in mind that although a reviewing court is free to state the maximum penalty the record will sustain, it should leave the exact nature of the penalty to be imposed to the discretion of the agency (*Rob Tess Rest. Corp. v New York State Liq. Auth.*, 49 NY2d 874, 876), I am of the view that a more appropriate penalty under these circumstances would be the 30-day suspension recommended by the hearing officer.